UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

DERRICK SUMRALL                                                                 PLAINTIFF

v.                                                    CIVIL ACTION NO. 4:11-cv-00031-FKB

GENE PEEBLES, *et al*.                                              DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the Court on the Motion for Summary Judgment filed by Defendants Officer Gene Peebles, Captain Melissa McCarter, Major Laurie Robinson, and Sheriff Billy Sollie (Docket No. 40), as well as the Motion for Summary Judgment filed by Nurse Sheila Hanlin (Docket No. 42). Defendant Rhonda Tomberlin has never been served with process, despite the Court ordering defense counsel to provide her last known address and having process re-issued once defense counsel had done so. Docket Nos. 33 and 35. Having considered the motions, the Court concludes that they are well-taken and are granted.

Derrick Sumrall, a prisoner proceeding *pro se* and *in forma pauperis,* brought this action pursuant to 42 U.S.C. § 1983. In this case, Sumrall claims that while incarcerated at the Lauderdale County Detention Facility (LCDF), he was subjected to excessive force when Officer Gene Peebles slammed a cell door on his back, denied due process when he was not allowed to call witnesses at a disciplinary hearing, and denied medical treatment because Nurse Sheila Hanlin did not effectively treat his alleged back pain. Docket No. 40-1, pp. 8, 9, 12-15. The Court held a <u>Spears</u> hearing[1] on December 28, 2011, to allow Sumrall to fully explain his claims. Docket No. 40-1.

---

[1]<u>See</u> <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985).

1

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." St. Amant v. Benoit, 806 F.2d 1294, 1296-97 (5th Cir.1987). "The requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). "Only disputes over the facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. Moreover, the Fifth Circuit has consistently held that "[b]are bones allegations are insufficient to withstand summary judgment because the party opposing summary judgment 'must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" Howard v. City of Greenwood, 783 F.2d 1311, 1315 (5th Cir.1986) (quoting Nicholas Acoustics & Specialty Co. v. H & M Constr. Co. Inc., 695 F.2d 839, 845 (5th Cir.1983)).

## EXCESSIVE FORCE CLAIM

Plaintiff asserts an excessive force claim alleging that Officer Gene Peebles "slammed" a cell door "on [his] back." Docket No. 40-1, p. 10. In his Complaint, Sumrall states that, on the morning of September 24, 2010, he was served a breakfast tray "contaminated" with food from a previous meal. Docket No. 1, p. 4. He contends that, although he asked for another tray, he never received one. Docket No. 40-1, p. 9. Eventually, while out of his cell, Sumrall claims that he "asked to speak to the sergeant" about this matter and that Officer Peebles "pulled his taser out[,] . . . pointed it in [his] face[,]" Id., p. 10, and gave him a "direct order . . . [that he had] 5

2

sec[onds] to return to [his] cell." Docket No. 40-2, p. 7. According to Sumrall, he then "went back [to his cell], walked in [his] cell door[, and] [t]hat's when [Officer Peebles] slammed the door." Docket No. 40-1, p. 11.

The next day, a nurse at LCDF examined Sumrall. The medical records for the examination state that he presented to the nurse complaining that a "door was slammed on [his] back." Docket No. 45, p. 9. The medical records indicate that Sumrall had no numbness, swelling, or bruising and "no visible injury." Id.

The Eighth Amendment prohibits cruel and unusual punishment. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). Further, "the Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997)(quoting Hudson, 503 U.S. at 10). And, in order to state a cognizable Eighth Amendment claim for excessive force, "the injury must be more than *de minimis*, but need not be significant." Id.

Based on the undisputed material facts of this case, Sumrall simply has no valid Eighth Amendment excessive force claim. Applying the authority cited above, the Court finds that shutting the door on Plaintiff's back was nothing more than a *de minimis* use of force to maintain order by closing the cell door, not cruel and unusual punishment. The Court also finds Sumrall's injury, if any, *de minimis* and not actionable under the Eighth Amendment.

3

DUE PROCESS

Sumrall next contends that he was not allowed to call witnesses during a disciplinary hearing arising from the September 24, 2010, incident with Officer Peebles. After the hearing, Sumrall was found guilty of: (1) failure to obey a direct order; and (2) interference with staff duties. Docket No. 40-2, p. 2 and 3. Sumrall received a disciplinary punishment of 60 days lockdown with one hour out daily and no visitation. Id.

Although Sumrall now asserts a due process claim alleging that he was not allowed to call witnesses, he appealed the disciplinary hearing decision and did not assert in his appeal that he was unable to call witnesses. Docket No. 40-2, pp. 6-9. In fact, Sumrall filed four pages in relation to his appeal and never mentioned anything about any alleged inability to call witnesses. See Id.

More importantly, however, Sumrall did not lose any earned good time as punishment. It is well-established that claims regarding quality of incarceration but not quantity do not invoke the protection of the Due Process Clause. See, e.g., White v. Mississippi, 2006 WL 1999141 (S.D. Miss. July 16, 2006). As Judge Starrett noted in White:

> To invoke the protections of the Due Process Clause, the plaintiff must have a protected liberty interest at stake. A constitutionally protected liberty interest is "limited to freedom from restraint which ... imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 32 L.Ed.2d 418 (1995). The classification of the plaintiff in a certain level of custody is not an "atypical and significant hardship" of prison life. The United States Court of Appeals for the Fifth Circuit applying Sandin has held that "administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest." Pichardo v. Kinker, 73 F.3d 612, 613 (5th Cir.1996)(quoting Luken v. Scott, 71 F.3d 192, 193 (5th Cir.1995)). The protections afforded by the Due Process Clause do not extend to "every change in the conditions of confinement" which are adverse to a prisoner. Madison v. Parker, 104 F.3d 765, 767-68

>    (5th Cir.1997) (inmate's 30 day commissary and cell restrictions as punishment do not present the type of atypical, significant deprivation in which a state might create a liberty interest); see also Bulger v. United States, 65 F.3d 48, 50 (5th Cir.1995)(holding that the loss of a prison job did not implicate the prisoner's liberty interest even though the prisoner lost the ability to automatically accrue good-time credits); see also Davis v. Carlson, 837 F.2d 1318, 1319 (5th Cir.1988)(prisoners do not have a constitutional right to contact visits or conjugal visits). As such, the Court finds that plaintiff has failed to state a viable due process claim regarding the loss of his prison privileges and his custodial classification.

Id. at 2.

The Court finds that Sumrall's sixty-day punishment in this case does not constitute an atypical and significant hardship and he was not, therefore, deprived of a constitutionally protected interest.

## DENIAL OF MEDICAL CARE

Finally, Sumrall asserts a denial of medical care claim against Nurse Hanlin. Sumrall testified that he has scoliosis and all Nurse Hanlin would give him for his back pain was ibuprofen or Tylenol. Docket No. 40-1, p. 15. Plaintiff contends that he should have been sent to a specialist for his back.

Medical records submitted by Defendant Hanlin in support of her motion indicate that Sumrall was seen for back pain by a nurse on September 25, 2010, which was the day after the cell door incident, by a nurse again on October 9, 2010, and was examined by Dr. Walter Gipson on December 2, 2010. LCDF also obtained and reviewed Plaintiff's prior records, which indicated that he had been treated for his back in 2007, when he received treatment at Hall Chiropractic Clinic after an automobile accident.

As to Defendant Hanlin's participation in Sumrall's back treatment, evidence submitted

5

in support of Hanlin's motion shows the following.[2] Sumrall complained to Nurse Hanlin that his back hurt when she was passing out medications to inmates. Docket No. 42-4, p. 1. In response, she advised Sumrall to complete a sick-call slip to be examined, but Sumrall refused. Id., p. 2. Despite Sumrall's refusal to complete the required sick-call request, Nurse Hanlin nevertheless arranged for Sumrall to see Dr. Walter Gipson, the physician who is the medical director of the medical unit at LCDF. Id. Dr. Gipson examined Sumrall and even watched the surveillance video of the cell door incident. Id., pp. 2-3. Further, based on Sumrall's representation that he had been seen and his back x-rayed at Hall Chiropractic Clinic after 2007, Dr. Gipson ordered that the x-ray report be obtained. Id., p. 2. LCDF contacted Hall Chiropractic Clinic, but the Clinic advised that Sumrall had not been seen there since 2007 and that it had no subsequent reports. Id., p. 2. In treatment of Sumrall, Dr. Gipson prescribed Naproxen and his orders were carried out. Docket Nos. 42-4 and 5; Docket No. 45 (medical records filed under seal). Based on his examination and review of the surveillance video, Dr. Gipson concluded that Sumrall did not need to be sent to a specialist. Docket No. 42-4, p. 3.

Plaintiff may not prevail on a denial of medical care claim unless he demonstrates that the defendant was deliberately indifferent to a serious medical need. See, e.g., Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999). Sumrall must demonstrate both that Nurse Hanlin was aware of facts from which an inference could be drawn that he faced a substantial risk of serious harm, and that she drew that inference. See, e.g., Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). A mere disagreement about the course of treatment does not meet this standard. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

---

[2] Sumrall filed no response to the defendants' motions for summary judgment.

Plaintiff's denial of medical care claim does not survive summary judgment in light of his admissions and the evidence submitted that he was in fact treated, just not the way he wanted. Sumrall has certainly failed to show that Defendant Hanlin was deliberately indifferent to a serious medical need.

Based on the undisputed material facts of this case, the Court finds that Sumrall has no valid denial of medical care claim in relation to his back. The Court also finds that Sumrall had no constitutional right to be seen by a specialist for his back pain. See Lett v. Buckhalter, 2008 WL 321833, *3 (S.D. Miss. Jan. 8, 2008).

## SUPERVISORY CLAIMS

Sumrall's claims against Defendants Sollie and McCarter are that they were supervisors and therefore responsible for the alleged constitutional violations. Docket No. 40-1, pp. 18-20. The Court has determined that Sumrall suffered no deprivation of his constitutional rights. But, even if he had, Sumrall has failed to allege facts against these defendants on which any liability could be based.

To hold these defendants responsible, Plaintiff must demonstrate either that they were involved personally in an alleged constitutional violation or were responsible for a custom or policy which resulted in the deprivation of protected rights. See Alton v. Texas A&M University, 168 F.3d 196, 200 (5th Cir. 1999). Sumrall has done neither.

## DEFENDANT TOMBERLIN

Plaintiff has failed to serve process in this case on Defendant RhondaTomberlin. Plaintiff is hereby notified that if he does not provide a current, valid address for Defendant Tomberlin within thirty (30) days of entry of this Order, his complaint against her shall be dismissed

pursuant to Rule 4(m).

## CONCLUSION

Based on the foregoing, Plaintiff's Complaint is dismissed with prejudice as to all defendants except Tomberlin. If Plaintiff has not provided to the Court a current, valid address for Tomberlin within thirty days of entry of this Order, his claims against Tomberlin shall be dismissed without prejudice.

SO ORDERED, this the 11th day of July, 2012.

    /s/ F. Keith Ball
    UNITED STATES MAGISTRATE JUDGE